JOHN S. GAYNOE, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFF V. FIRST UNION CORPORATION AND FIRST UNION DIRECT BANK, N.A., DEFENDANTS

No. COA01-1171

(Filed 5 November 2002)

### 1. Banks and Banking— credit cardholder agreement— Georgia law—amendment of APR—not breach of contract

The trial court did not err by granting summary judgment for defendant bank on the breach of contract claim arising out of a cardholder agreement for a credit card account applying Georgia law, because: (1) under Georgia law the construction of a contract is a question of law for the court; (2) plaintiff's claim that defendant breached its cardholder agreement by amending the APR during the annual period rests on an interpretation of the cardholder agreement, and such interpretation of the cardholder agreement was a question of law for the trial court to decide; and (3) the trial court properly interpreted the cardholder agreement and determined that there were no triable issues of fact.

### 2. Unfair Trade Practices— credit cardholder agreement— motion to dismiss—sufficiency of evidence

The trial court did not err by dismissing plaintiff's unfair and deceptive trade practices claim arising out of a cardholder agreement for a credit card account, because defendant banks acted in accordance with the cardholder agreement and there are no independent grounds for an unfair or deceptive trade practices claim under N.C.G.S. § 75-1.1.

---

3. **Civil Procedure— consideration of summary judgment motion prior to ruling on pending motion for class certification—judicial economy**

The trial court did not err by granting summary judgment for defendants, on claims arising out of a cardholder agreement for a credit card account applying Georgia law, prior to ruling on plaintiff's pending motion for class certification because: (1) plaintiff moved for class certification some nineteen months after the action was filed and at a time when all discovery necessary to determine the merits of plaintiff's claim had taken place; and (2) the trial court is not precluded from considering a summary judgment motion prior to ruling on a class certification motion where, as here, the parties had stipulated that both motions could be considered simultaneously and when judicial economy is best served by allowing the trial court discretion in addressing summary judgment prior to class certification.

Appeal by plaintiff from an order entered 28 August 1998 by Judge Marvin K. Gray in the Mecklenburg County Superior Court and an order entered 18 January 2001 by Judge Ben F. Tennille in the Special Superior Court for Complex Business Cases. Heard in the Court of Appeals 15 August 2002.

*Lewis & Roberts, P.L.L.C., by Gary W. Jackson and Ryan J. Adams; and Green Fauth & Jigarjian, L.L.P., by Robert S. Green and Gordon M. Fauth, Jr., for plaintiff-appellant.*

*James, McElroy & Diehl, P.A., by Edward T. Hinson, Jr. and Preston O. Odom, III; and Pope & Hughes, P.A., by J. Preston Turner, for defendants-appellees.*

WALKER, Judge.

Plaintiff's claims arise out of a cardholder agreement pursuant to his having obtained a credit card account from defendant First Union Direct Bank, N.A. (FUDB), a Georgia corporation and wholly-owned subsidiary of defendant First Union Corporation, headquartered in Charlotte, North Carolina.

In 1993, plaintiff submitted a credit card application to FUDB on which he selected an option requiring him to pay an annual fee of $39 with an annual percentage rate (APR) of prime plus 6.9 percent. Of the six options offered by FUDB on the application, plaintiff's option featured the highest annual fee and lowest APR. The application also

GAYNOE v. FIRST UNION CORP.

[153 N.C. App. 750 (2002)]

stated that: "I agree to abide by the selected interest rates, fees, charges and options in this application and by the terms and conditions of the First Union Credit Card agreement that will be mailed to me."

FUDB accepted plaintiff's application and sent him a credit card and a cardholder agreement. The cardholder agreement permitted FUDB to amend any part of the agreement at any time upon advance written notice to plaintiff and gave both FUDB and plaintiff the option of cancelling the credit card account at any time. The cardholder agreement further stated that the annual fee and APR applied to plaintiff's account would be determined by the option selected on the original credit card application. The cardholder agreement provided it was to be governed by Georgia and federal law.

After renewing his option in July 1994 by again paying a $39 annual fee, plaintiff requested that the APR applicable to his account be reduced to prime plus 2.9 percent. FUDB agreed to the new APR and waived the $15 conversion fee. Plaintiff's annual fee remained at $39 from 1993 to 1997, when plaintiff closed his credit card account with FUDB.

In February 1997, FUDB notified plaintiff by letter that it was amending the applicable APR to prime plus 11.9 percent, while retaining the $39 annual fee, effective 1 April 1997. The letter also provided a contact telephone number and indicated that plaintiff could cancel his account by paying the outstanding balance prior to the effective date of 1 April 1997.

Upon receipt of written notice that the APR would be amended, plaintiff claims he contacted a First Union customer service representative who advised him that the amended APR would not apply to his account. Thereafter, plaintiff continued using the credit card and received monthly statements on his account which reflected the amended APR as of 1 April 1997.

On 3 September 1997, plaintiff sent a letter to First Union Corporation challenging FUDB's right to amend the terms of his account by increasing his APR during the annual period from July 1996 to July 1997. First Union Corporation responded by letter on 23 September 1997 and informed plaintiff that his account would not be returned to the "previous pricing option." Plaintiff paid his remaining account balance in full on 9 June 1998 under the amended APR.

GAYNOE v. FIRST UNION CORP.

[153 N.C. App. 750 (2002)]

Plaintiff filed this action against FUDB and First Union Corporation on 19 December 1997, alleging breach of contract and unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 (2001). On 28 August 1998, the trial court in Mecklenburg County granted the motion to dismiss all claims against First Union Corporation and granted the motion to dismiss the unfair and deceptive trade practices claim against FUDB, leaving only the breach of contract claim against FUDB.

On 16 August 1999, plaintiff moved for class certification and, on 23 November 1999, FUDB moved for summary judgment. On 8 December 1999, the parties stipulated that the trial court could consider the class certification and summary judgment motions simultaneously, with the summary judgment motion being considered "out of session and out of term." Thereafter, the case was assigned to Judge Ben F. Tennille, Special Superior Court Judge, who heard arguments on the cross summary judgment motions as well as the motion for class certification. In its order and opinion of 18 January 2001, the trial court denied plaintiff's summary judgment motion and granted defendant's summary judgment motion without making a ruling on class certification. Plaintiff appealed both the order granting defendants' motions to dismiss and the order granting defendants' summary judgment motion.

[1] Plaintiff contends that the trial court erred in granting summary judgment for FUDB on the breach of contract claim. Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2001). The moving party bears the burden of demonstrating the lack of triable issues. *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972). In making the summary judgment determination, the trial court must view the evidence in the light most favorable to the non-movant and draw any reasonable inference in the non-movant's favor. *Garner v. Rentenbach Constructors, Inc.*, 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999). The trial court's duty in considering a summary judgment motion is to determine whether a genuine issue of fact exists for the jury. *Johnson v. Builder's Transport, Inc.*, 79 N.C. App. 721, 722, 340 S.E.2d 515, 516 (1986).

The parties here agree that Georgia law is applicable as specified in the cardholder agreement. Under Georgia law, "[t]he construction

of a contract is a question of law for the court." Ga. Code Ann. § 13-2-1 (2002). The court first determines if the contract language is clear and unambiguous. *Careamerica, Inc. v. Southern Care Corp.*, 494 S.E.2d 720, 722 (Ga. App. 1997). If the court finds ambiguity, it then resorts to rules of contract construction to resolve the ambiguity. *Id.* However, if the contract language is unambiguous, the court must enforce the contract as written. *Id.* Only if the court cannot resolve an ambiguity is a question of fact presented for the jury to decide. *Andrews v. Skinner*, 279 S.E.2d 523, 525 (Ga. App. 1981).

In this case, plaintiff's claim that FUDB breached its cardholder agreement by amending the APR during the annual period rests on an interpretation of the cardholder agreement. Such interpretation of the cardholder agreement was a question of law for the trial court to decide.

In the application, plaintiff selected an option requiring payment of an annual fee of $39 with an APR of prime plus 6.9 percent. Although the application and cardholder agreement described the $39 fee and interest rate as "annual," the following additional terms appeared in the cardholder agreement:

Amendments. You [FUDB] may change any part of this Agreement at any time, as long as you give me [plaintiff] advance written notice as required by law. Any change in terms will apply to my outstanding balance existing as of the effective dates as well as to all charges made after that date.

Cancellation. I can cancel my Account at any time. . . . You may cancel this Agreement at any time. However my obligation under this Agreement and any changes made prior to cancellation will continue to apply until after I have paid you all the money I owe on the Account.

FUDB contends it amended the APR after giving the required notice to plaintiff in accordance with the terms of the cardholder agreement. However, plaintiff claims that, upon payment of the $39 annual fee, he was entitled to the APR of prime plus 2.9 percent for the twelve-month period ending July 1997.

Here, the record shows that plaintiff's APR was lowered to prime plus 2.9 percent after he paid his annual fee of $39 in July 1994. He received the benefit of this lower rate until 1 April 1997. Since plaintiff was entitled under the cardholder agreement to the lower APR, defendant FUDB would likewise be entitled to increase the APR upon

proper notice when defendant's cost of operation increased. As the trial court properly concluded, the annual fee imposed was a charge for the issuance or availability of credit that was charged to the customer on an annual basis. Further, the charging of an annual fee was not consideration for favorable APR terms. Thus, the trial court correctly interpreted the cardholder agreement and determined that there were no triable issues of fact entitling defendant to summary judgment.

[2] Plaintiff further contends that defendants perpetrated a "bait and switch" on its customers by sending ambiguous communications indicating the possibility of a change in the APR regardless of the rate applicable to the individual cardholder. Further, plaintiff alleges that defendants told its cardholders, including plaintiff, who called to inquire about the change in the applicable APR, that there was no cause for concern, only to thereafter increase the APR. Plaintiff contends this conduct clearly constitutes an unfair and deceptive trade practice. We disagree. Since we have concluded that defendants acted in accordance with the cardholder agreement, a careful review of the record does not establish independent grounds for an unfair or deceptive trade practices claim under Chapter 75 of the North Carolina General Statutes. Therefore, the trial court did not err in dismissing plaintiff's unfair and deceptive trade practices claim against FUDB and First Union Corporation.

Because we have concluded that the trial court properly disposed of all claims against both defendants, we need not address plaintiff's assertion that the trial court erred in granting the motion to dismiss for failure to state any claim against First Union Corporation.

[3] Plaintiff also argues that the trial court erred in granting summary judgment prior to ruling on plaintiff's pending motion for class certification, citing this Court's recent decision in *Pitts v. American Sec. Ins. Co.*, 144 N.C. App. 1, 550 S.E.2d 179 (2001), *review allowed*, 355 N.C. 214, 560 S.E.2d 133 (2002), *aff'd by an equally divided court*, 356 N.C. 292, — S.E.2d — (2002). In support of this argument, plaintiff contends *Pitts* holds that a summary judgment motion may not be considered by a trial court prior to a ruling on class certification. In *Pitts*, plaintiff entered a collateral protection insurance program underwritten by defendant American Security Insurance Company in connection with a purchase money security agreement with defendant Wachovia Bank, N.A. *Pitts*, 144 N.C. App. at 4, 550 S.E.2d at 183-84. Plaintiff filed a complaint making several allegations, including

unfair and deceptive trade practices and breach of contract, and simultaneously filed a motion for certification of a proposed class. *Id.* at 5-6, 550 S.E.2d at 184-85. Subsequently, defendants moved for summary judgment on all of plaintiff's claims. *Id.* at 6, 550 S.E.2d at 185. The trial court denied plaintiff's motion for class certification and granted defendants' motion for summary judgment. *Id.* at 7, 550 S.E.2d at 185. On appeal, this Court held that the trial court erred in its ruling on the existence of the class and adequacy of the class representative and reversed the class certification portion of the judgment. *Id.* at 19-20, 550 S.E.2d at 193.

In *Pitts*, plaintiff's motion for class certification was filed at the time the action was filed. Here, the plaintiff moved for class certification some 19 months after the action was filed and at a time when all discovery necessary to determine the merits of plaintiff's claim had taken place. We do not read *Pitts* as precluding the trial court from considering a summary judgment motion prior to a ruling on a class certification motion where, as here, the parties had stipulated that both motions could be considered simultaneously and when judicial economy is best served by allowing the trial court discretion in addressing summary judgment prior to class certification. Thus, it is apparent that plaintiff would not want to be burdened with the time and expense of class certification if his claims could not survive summary judgment.

We have carefully reviewed plaintiff's remaining assignments of error and find them to be without merit.

Affirmed.

Chief Judge EAGLES and Judge BIGGS concur.